IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

LISA CARPENTER MOONEY                                                              PLAINTIFF

V.                                                           CIVIL ACTION NO. 3:11CV050-B-A

LAFAYETTE COUNTY SCHOOL DISTRICT                                      DEFENDANT

# **MEMORANDUM OPINION**

This cause comes before the court upon the defendant's motion for summary judgment. Upon due consideration of the motion, response, exhibits, and supporting and opposing authority, the court is ready to rule.

Factual and Procedural Background

The plaintiff, Lisa Carpenter Mooney, was hired by the defendant, Lafayette County School District ("the District"), as a speech pathologist in August 2001. In May 2006, Mooney was promoted to the assistant principal position at Lafayette County Elementary School, where she worked under the school's principal, Margaret Boyd.

In 2007, the District's incumbent superintendent of education, Mike Foster, ran for re-election against challenger Carolyn Davis. Davis also worked for the District at that time. The plaintiff alleges that it was well known throughout the District that she supported Davis over Foster. The plaintiff asserts that during the course of the campaigns, the District's assistant superintendent at the time, Ben McClung, approached her seeking her help in gathering negative information for Davis' personnel file. Mooney alleges that she refused to cooperate and likewise refused to give McClung money in support of Foster's campaign. McClung denies Mooney's allegations. Foster was ultimately re-elected.

In May 2009, the District decided to demote Mooney back to a speech pathologist position. The plaintiff asserts that her putative replacement was to be a male, though the District disputes this assertion. The plaintiff protested the demotion as gender discrimination, and the District rescinded the demotion. Mooney therefore maintained her assistant principal position for the 2009-2010 school year, but she was placed on an improvement plan for alleged problems she was having with her job performance including time clock and tardiness issues as well as problems with her demeanor, particularly in dealing with students and parents of students. In one instance, students reported that Mooney grabbed the arm of a girl and forcefully slung her into her seat. The District investigated the incident, counseled with Mooney, and allowed her to retain her job. In September 2009, Mooney was investigated following a strip search of an eight-year-old male student. According to a demand letter sent by an attorney representing the student and a police report of the incident, the plaintiff took the student into the bathroom following an allegation that he had stolen a roll of tape. The demand letter and police report indicate that Mooney ordered the boy to pull down both his pants and his underwear to his ankles and hold his arms up in the air, completely exposing himself. Mooney does not dispute this assertion or that she did not call the parents of the child after the incident. The District did not terminate Mooney after its investigation but did issue a written reprimand to her.

In addition to these alleged behavioral issues, the defendant asserts that Mooney had repeated problems with tardiness and absenteeism. The school installed a new time clock in 2008, but administrators were not initially required to use it. Principal Boyd explained, however, that she began requiring all of her administrators to clock in beginning in 2009. The plaintiff's

time clock records for the 2009-2010 school year indicate that the plaintiff was tardy on numerous occasions[1] and failed to clock in at all on approximately seventy days.

Mooney's contract was non-renewed on May 5, 2010. The District asserts that the decision not to renew Mooney's contract was based on legitimate financial reasons and was wholly unrelated to her political support of Carolyn Davis three years earlier. The District instituted a reduction in work force plan in 2010 to cut payroll expenses, and the principal at Mooney's school, Margaret Boyd, chose to eliminate Mooney's position. The reduction plan resulted in the termination of a total of twenty-four employees and saved the District over $400,000.00 during that period. The assistant principal position at the elementary school was not reopened until the 2011-2012 school year. A female was hired for the position at that time.

The plaintiff filed the instant action on April 6, 2011, pursuant to 42 U.S.C. § 1983 and Title VII, 42 U.S.C. §§ 2000e - 2000e-17, asserting that she was terminated in retaliation for engaging in speech protected by the First Amendment and in retaliation for opposing gender discrimination in violation of Title VII. The defendant has now moved for summary judgment on all of the plaintiff's claims.

<u>Standard of Review</u>

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On a motion for summary judgment, the movant has the initial

---

[1] The defendant indicates fifty-one instances, but the court counts thirty-eight in the records attached to the defendant's motion.

burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant makes such a showing, the burden then shifts to the non-movant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(c), (e)). Before finding that no genuine issue for trial exists, the court must first be satisfied that no rational trier of fact could find for the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[T]he issue of fact must be 'genuine.' When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586.

The court must render summary judgment in favor of the moving party if "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 135 (2000). The Supreme Court has cautioned, however, that the ruling court must not encroach upon the functions of the jury. The Court stated in *Reeves* as follows:

> [T]he court must review all of the evidence in the record, drawing all reasonable inferences in favor of the nonmoving party, but making no credibility determinations or weighing any evidence. The latter functions, along with the drawing of legitimate inferences from the facts, are for the jury, not the court. Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe.

*Id.* (citations omitted). "Summary judgment, although a useful device, must be employed cautiously because it is a final adjudication on the merits." *Jackson v. Cain*, 864 F.2d 1235, 1241 (5th Cir. 1989).

4

Analysis

*First Amendment Retaliation*

In order to prevail on her First Amendment retaliation claim, the plaintiff "must prove that (1) she suffered an adverse employment decision; (2) she was engaged in protected activity; and (3) the requisite causal relationship between the two exists." *Jordan v. Ector County*, 516 F.3d 290, 294-95 (5th Cir. 2008). Whether the activity at issue is constitutionally protected turns on three questions:

> First, it must be determined whether the employee's speech is pursuant to his or her official duties. If it is, then the speech is not protected by the First Amendment. Second, if the speech is not pursuant to official duties, then it must be determined whether the speech is on a matter of public concern. Third, if the speech is on a matter of public concern, the *Pickering*[2] test must be applied to balance the employee's interest in expressing such a concern with the employer's interest in promoting the efficiency of the public services it performs through its employees.

*Davis v. McKinney*, 518 F.3d 304, 312 (5th Cir. 2008) (quoting Ronna Greff Schneider, 1 *Education Law: First Amendment, Due Process and Discrimination Litigation* § 2:20 (West 2007)). Certain cases dispense with this breakdown and combine the elements into the following: (1) the employee suffered an adverse employment action; (2) the employee's speech involved a matter of public concern; (3) the employee's interest in speaking outweighs the employer's interest in promoting efficiency in the workplace; and (4) the speech motivated the employer's adverse employment action. *Charles v. Grief*, 522 F.3d 508, 510 (5th Cir. 2008).

---

[2] *Pickering v. Board of Educ.*, 391 U.S. 563, 568 (1968). *See also Connick v. Myers*, 461 U.S. 138 (1983).

The Fifth Circuit "has made clear that First Amendment retaliation claims are governed by the *Mt. Healthy* 'mixed-motives' framework, not by the *McDonnell Douglas* pretext analysis." *Id.* at 516 n.28. The court explained:

> In *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 287, 97 S. Ct. 568, 50 L. Ed. 2d 417 (1977), the Supreme Court held that, once an employee has met his burden of showing that his protected conduct was a "substantial factor" or "motivating factor" in the employer's adverse employment action, the district court should "determine whether [the employer] ha[s] shown by a preponderance of the evidence that it would have [taken the same adverse employment action] even in the absence of the protected conduct." If the employer is able to make such a showing, then the protected conduct in question does not amount to a constitutional violation justifying remedial action.

*Id.*

The District concedes that an adverse employment action occurred when Mooney's contract was non-renewed and admits that her alleged political support of Davis occurred prior to her non-renewal. The District contests, however, that the two events are causally related. The District further contests that Mooney engaged in protected activity.

The plaintiff correctly notes that "there can be no question that . . . campaigning for a political candidate relate[s] to a matter of public concern." *Vojvodich v. Lopez*, 48 F.3d 879, 885 (5th Cir. 1995). The plaintiff has failed, however, to show that she openly campaigned against Foster and for Davis. She simply asserts that she declined to file a report against Davis and declined to contribute money to Foster's campaign. While she contends that her support of Davis was generally known throughout the District, she has directed the court to less than compelling evidence that the District should be charged with this knowledge. The court is nevertheless willing to assume, *arguendo*, for this analysis that the plaintiff did engage in protected speech that was a matter of public concern and that the speech passes the *Pickering*

6

and *Connick* tests. This assumption, however, provides the plaintiff no help because she cannot show a causal connection between her protected activity and her adverse employment action. "To prevail, [the plaintiff] must show that she engaged in protected conduct and that it was a motivating factor in her discharge." *Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 601 (5th Cir. 2001). The plaintiff has not met this burden.

The plaintiff cannot establish a causal connection because her alleged support of Davis in the 2007 superintendent election lacks reasonable temporal proximity to the 2010 non-renewal of her employment contract. In *Clark County School District v. Breeden*, 532 U.S. 268, 273-74 (2001), a Title VII retaliation case,[3] the United States Supreme Court held that a twenty-month period between a protected activity and an adverse employment decision is not sufficiently close to make a prima facie showing of causation.

The plaintiff relies on an alleged "chronology of events" from which a jury may plausibly infer retaliation. *See Brady v. Houston Indep. Sch. Dist.*, 113 F.3d 1419, 1424 (5th Cir. 1997). Like the unsuccessful plaintiff in *Brady*, however, the plaintiff "has also failed to present a chronology of events that would allow reasonable jurors to draw an inference of retaliation." *Id.* Mooney asserts that her exemplary record from 2001 until 2006, followed by the alleged deterioration of her job performance immediately after the 2007 election (which she characterizes as "mysterious"), supports the inference of retaliation and serves as compelling evidence that her protected speech was a motivating factor for her termination.

---

[3]The court finds no reason to distinguish between temporal proximity requirements in establishing a causal link in First Amendment retaliation claims versus Title VII retaliation claims. *See, e.g., McCoy v. City of Shreveport*, 492 F.3d 551, 563 (5th Cir. 2007) ("[An] evidentiary shortcoming does not produce a different result simply because this claim is grounded in the First Amendment's, and not Title VII's, protection of [the plaintiff's] speech.").

The plaintiff's chronology argument is, in essence, a temporal proximity argument, though the plaintiff would have the court, and ultimately the jury, to acknowledge the temporal proximity not between her protected activity and her non-renewal but rather between the protected activity and the alleged decline in her work performance – allegations which she asserts began in late 2007 or early 2008, shortly after the alleged protected activity.

Placing an employee on a job performance improvement plan, which did not occur in the plaintiff's case until the 2009-2010 school year, is not an adverse employment action. *See Turner v. Novartis Pharm. Corp.*, 442 Fed. Appx. 139, 141 (5th Cir. 2011) ("The district court was correct to find that placing an employee on PIP [improvement plan] is not an ultimate employment decision."). The court must, therefore, consider the period between Mooney's protected activity and her non-renewal – a period of almost three years.[4] The Supreme Court explained in *Clark County*, "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" *Clark County Sch. Dist.*, 532 U.S. at 273-74. As mentioned, twenty months was not close enough in *Clark County*. The Fifth Circuit has found a four-month lapse between the protected activity and the adverse employment action sufficient to show a causal link. *See, e.g., Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001). The court has consistently rejected periods beyond four months as sufficient to establish causation. *See, e.g., Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 472 (5th Cir. 2002) (five month time period, without other evidence of retaliation, insufficient to establish causal link); *Harvey v. Stringer*,

---

[4]Even if the court were to consider the plaintiff's placement on the improvement plan as an adverse employment action, the temporal proximity requirement would not be met.

8

113 Fed. Appx. 629, 631 (5th Cir. 2004) ("This Court has never held that a 10-month time lapse, on its own, is sufficient to satisfy the causal connection for summary judgment purposes.").

Because she cannot prove a causal link between her alleged protected speech and her adverse employment action, the plaintiff fails to establish a prima facie case of retaliation, and her First Amendment claim must be dismissed. Even if the court were to find that the plaintiff established a prima facie case, however, the District has presented multiple legitimate, non-discriminatory reasons for Mooney's termination including problems with her behavior with parents, students, and other teachers, repeated tardiness and absenteeism, failure to improve despite the District's willingness to place her on the performance improvement plan – in short, poor job performance – and most significantly, uncontested evidence of a work force reduction plan which resulted in the termination of twenty-four employees, including plaintiff, and a District-wide savings of over $400,000.00.

The only attempt the plaintiff has made to counter the defendant's showing that it would have taken the same action against the plaintiff even in the absence of the protected conduct is to assert that she was the only administrator terminated as a result of the work force reduction plan. She does not dispute the District's assertions of her inappropriate discipline of certain students for which she was investigated and, in at least one instance, reprimanded; nor does she dispute her frequent tardiness and absenteeism or the accuracy of the District's time sheets.

The plaintiff has presented no evidence of retaliatory animus in this case beyond mere conjecture and speculation. It is axiomatic that "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th Cir. 2003). Further, self-

serving "affidavit or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a motion for summary judgment." *Clark v. America's Favorite Chicken Co.*, 110 F.3d 295, 297 (5th Cir. 1997).

The plaintiff's inability to establish a prima facie case is dispositive of her First Amendment claim. The court further finds, however, that even if the plaintiff could establish a prima facie case, the defendant has successfully shown, "by a preponderance of the evidence, that it would have taken the same action against the plaintiff even in the absence of the protected conduct."[5] The plaintiff has failed to refute this showing with evidence from which a reasonable juror could determine that her protected activity precipitated the adverse employment action against her. In light of the legitimate reasons proffered by the District for its actions, Mooney's evidentiary failure is fatal to her First Amendment claim. *See McCoy*, 492 F.3d at 563. For these reasons, the defendant is entitled to summary judgment on this claim.

*Title VII Retaliation*

The plaintiff also brings a claim for Title VII retaliation. She asserts that when she was presented with the possibility of demotion from assistant principal back to her original position of speech pathologist, she formally protested the demotion as gender discrimination, asserting that her putative replacement was a less-qualified male.[6] The District rescinded the demotion, and the plaintiff retained her position as assistant principal for another school year. Applying the

---

[5] *Brady*, 113 F.3d at 1423.

[6] The defendant refutes the assertion that it intended to replace the plaintiff with a male. After the plaintiff's non-renewal in May 2010, the assistant principal position was vacant for one school year (2010-2011), and the position was ultimately filled by a female the following school year (2011-2012).

same rationale as in its analysis of the plaintiff's First Amendment claim, the court finds that this claim must likewise fail.

"The *McDonnell Douglas* evidentiary framework applies to Title VII retaliation claims brought under a pretext theory." *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005). To establish a prima face case of Title VII retaliation, the plaintiff must show "1) that she engaged in a protected activity; 2) that an adverse employment action occurred; and 3) that a causal link existed between the protected activity and the adverse action." *Id.* at 610. A plaintiff has engaged in protected activity if she either (1) "opposed any practice made an unlawful employment practice" by Title VII or (2) if she "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a). If the plaintiff is able to establish a prima facie case, "the burden then shifts to the defendant to demonstrate a legitimate non-discriminatory purpose for the employment action." *Aldrup v. Caldera*, 274 F.3d 282, 286 (5th Cir. 2001). If the defendant makes this showing, "the burden returns to the plaintiff to demonstrate that the employer's articulated reason for the employment action was a pretext for the real, discriminatory reason." *Id.* A plaintiff is not required to prove that retaliation was the only reason for the adverse employment action. She may instead meet her burden by showing that the Title VII protected activity was a motivating factor in the employment decision. *Smith v. Xerox Corp.*, 602 F.3d 320, 332 (5th Cir. 2010).

As was the case with her First Amendment claim, the plaintiff falls short in establishing a causal link between her protected activity and the adverse employment action. The problem once again is a lack of temporal proximity between the two. While there was only approximately a year between the alleged protected activity and the adverse employment action in regard to the Title VII claim, as opposed to the almost three-year lapse in regard to the First

Amendment claim, without further evidence of retaliatory animus, the lapse is fatal to the plaintiff's Title VII claim. As outlined in the court's analysis of the First Amendment claim, *supra*, the Fifth Circuit has consistently rejected periods beyond five months to establish the requisite causal link. Because the plaintiff cannot set forth a prima facie case, her claim must fail. Further, because she has presented no evidence of pretext or evidence that the protected activity was a motivating factor in her non-renewal, even if the court were to find a prima facie case, the defendant would nevertheless prevail.

## Conclusion

For the foregoing reasons, the court finds that the defendant's motion for summary judgment is well taken and should be granted. A separate judgment in accord with this opinion shall issue this day.

This, the 10th day of September, 2012.

/s/ Neal Biggers
**NEAL B. BIGGERS, JR.**
**UNITED STATES DISTRICT JUDGE**